BOYD, Justice.
These consolidated cases are before the Court on appeal from orders of the Public Service Commission. The orders appealed from relate to the rates or service of utilities providing telephone service. Therefore we have jurisdiction. Art. V, § 3(b)(2), Fla. Const. Both of the orders appealed from were rendered in the same quasi-judicial proceeding before the Public Service Commission. The orders concern the distribution, between appellant Southern Bell Telephone and Telegraph Company and appel-lee General Telephone Company of Florida, of long-distance telephone service toll revenues. We hold that the Public Service Commission has the statutory authority to “adjudicate” the dispute under section 364.-07(2), Florida Statutes (1981), and that this statute is a proper assignment of quasi-judicial authority pursuant to article V, section 1, Florida Constitution. We hold further that the Commission’s authority includes the power to order a change in the course of dealing followed by the two telephone companies pursuant to their contractual arrangement. However, we also hold that the Commission departed from the essential requirements of law in making the change retroactive. Because we find that the Commission exceeded its authority in making its order retroactive, we also hold that the Commission was wrong to penalize Southern Bell for its failure to immediately comply with the order.
Southern Bell and General Telephone are both in the business of providing long-distance telephone service. Because much long-distance service uses the equipment and facilities of both companies and because each company receives revenue from users in unequal proportion to the actual use of their respective facilities, it is necessary that they adjust the distribution of revenue received from users through billing. For many years, Southern Bell and General Telephone have been dividing long-distance telephone service revenues pursuant to two separate settlement agreements, one for intrastate and the other for interstate long-distance service toll revenues. Both agreements provide that the allocation of toll revenues is to be based upon periodic studies governed by the principles and procedures set forth in Part 67 of the Rules and Regulations of the Federal Communications Commission. The Federal *782 Communications Commission’s Separations Manual (Feb. 1971), which is incorporated by reference into the rules, provides that the studies are to be performed during “representative” periods. See 47 C.F.R. § 67.1 (1982). For several years prior to the development of the current dispute, a course of dealing had been followed by Southern Bell and General Telephone under which they divided their long-distance service revenues on the basis of periodic five-day study periods.
On January 1, 1981, General Telephone began to use seven-day study periods to determine what its share of revenues should be. Southern Bell refused to agree to this change in the study method, so General Telephone, on December 14, 1981, filed a petition with the Public Service Commission to resolve the dispute. Public Counsel joined the proceeding on behalf of the Citizens of the State of Florida and argued in favor of the change sought by General Telephone. On July 1, 1982, the Commission issued Order No. 10953 finding the seven-day study method to be more accurate and more appropriate and ordering the two utilities to use seven-day holding time studies for purposes of settling the distribution of toll revenues. Moreover, the Commission ordered that the change of method be made retroactive to January 1, 1981, the date General Telephone first unilaterally announced its intention to use the seven-day study periods. The Commission determined that General Telephone would have received a larger share of divided revenues had Southern Bell agreed to the change at that time. The Commission ordered Southern Bell to pay to General Telephone the money it had received since January 1, 1981 in excess of what it would have been entitled to keep if it had begun using the seven-day method when General Telephone announced its demand. This amount was determined to be about $33,000,000, with approximately $30,-000,000 attributable to interstate service and $3,000,000 attributable to intrastate service.
Southern Bell petitioned for rehearing, which was denied. So, Southern Bell filed a notice of appeal and asked the Commission for a stay of its order, indicating its readiness to make bond to protect General Telephone pending the appeal. The motion for stay was denied orally on October 21, 1982, and by written order on November 10. Meanwhile Southern Bell also asked this Court to stay the Commission’s order, which was denied on November 12, 1982, with reconsideration being denied on November 24, 1982.
On November 30, 1982, Southern Bell paid to General Telephone approximately $3,000,000, representing the intrastate portion of the money the Commission had ruled Southern Bell owed to General Telephone. As to the interstate portion, Southern Bell filed suit in United States District Court against the Public Service Commission and General Telephone seeking to enjoin enforcement of Order 10953 on the ground of unconstitutionality. On December 2, Southern Bell filed a petition with the Federal Communications Commission seeking a declaration that federal law preempts the field of interstate telephone service regulation. (Subsequently the Federal Communications Commission ruled in Southern Bell’s favor on this petition.) On December 15, the Public Service Commission asked this Court to stay the proceedings in the appeal of Order 10953 and to remand it to the Commission for reconsideration. This Court granted the request and remanded the case to the Commission. Southern Bell then voluntarily dismissed its federal court action without prejudice.
Upon remand, the Commission issued Order No. 11824, modifying its earlier order by limiting its effect to intrastate toll settlements. The Commission reversed its earlier conclusion and found that it had no statutory authority over interstate long-distance toll settlement agreements. Order No. 11824 also imposed a monetary penalty on Southern Bell for its earlier failure to comply with the intrastate portion of Order 10953. Although Order 10953 had in effect required Southern Bell to pay General Telephone $33,000,000, and although the Commission was reversing itself as to approxi *783 mately $30,000,000 of that amount, the Commission reasoned that the failure of Southern Bell, from November 17, 1982 when it exhausted administrative remedies until November 30,1982, to pay the $3,000,-000 attributed to intrastate revenues amounted to “open and unexplained diso-beyance [sic] of the Commission’s order.” The Commission imposed one-half the statutory penalty of $5,000 per day, section 350.127(1), Florida Statutes (1981), in recognition of the fact that as to interstate revenues, Order 10953 “may arguably have been invalid on its face.” Southern Bell appealed Order No. 11824, and we consolidated the two appeals in recognition of the fact that the two orders under review are essentially the products of a single proceeding. The Public Service Commission, General Telephone Company, and the Citizens of the State of Florida through Public Counsel, are before us as appellees and have filed briefs in support of the Commission’s action.
Southern Bell argues that the Public Service Commission’s order, requiring Southern Bell to pay General Telephone $3,000,-000, was an exercise of judicial authority over a contractual dispute and was therefore beyond the administrative and quasi-judicial powers of the Commission. Southern Bell relies on article Y, section 1, Florida Constitution, vesting all “judicial power” in the courts. The appellees respond that article V, section 1 allows administrative commissions to exercise quasi-judicial power in matters connected with the functions of their offices and that the Commission has been given authority to adjudicate disputes between telephone companies over the division of long-distance service revenues.
Section 364.07(2), Florida Statutes (1981), provides:
The commission is authorized to review intrastate toll settlement agreements and disapprove any such agreement if such agreement is detrimental to the public interest. The commission may also require the filing of all necessary reports and information pertinent to intrastate toll revenue settlements. The commission is also authorized to adjudicate disputes among telephone companies regarding intrastate telecommunications settlements.
This paragraph was enacted by the 1980 legislature. Ch. 80-36, § 8, Laws of Fla. See Florida Telephone Corp. v. Mayo, 350 So.2d 775 (Fla.1977) (commission had no power to regulate division of toll revenues in absence of statutory authority). The appellees argue that this grant of authority is valid because such adjudication directly relates to the Commission’s function in regulating the rates and service of telephone companies. Moreover, appellees contend, it was proper for the Commission to make its order regarding the method of time-study retroactive because, as a matter of fairness and public policy, the Commission properly determined that the new method should have been adopted when General Telephone demanded that it be adopted.
Southern Bell argues that the Commission has essentially reformed the contract between the two telephone companies and has departed from principles of due process. Southern Bell says General Telephone, if it was dissatisfied with the arrangement, should have terminated the agreement and negotiated a new one. However, the telephone companies’ agreement does not specify that five-day or seven-day studies will be used. It simply refers to the Federal Communications Commission’s rules incorporating the concept of periodic studies of “representative” periods.
We agree with appellees that the Commission has the authority to adjudicate disputes over the division of revenues and that this authority encompasses the power to order a change in practice on the matter of studying “representative periods.” Giving the Commission this authority did not offend against any principle proscribing the exercise of judicial authority by a quasi-judicial body. We believe that the statutory authority to adjudicate such disputes is properly related to the Commission’s essential function as regulator of the rates *784 and service of utilities. However, we believe that any such adjudication must be given prospective effect only. To hold otherwise would violate the principle against retroactive ratemaking. See City of Miami v. Florida Public Service Commission, 208 So.2d 249 (Fla.1968).
Having resolved the main thrust of the appeal as discussed above, we find it unnecessary to address Southern Bell’s argument that the Commission’s order of payment was an award of “monetary damages,” an essentially judicial function as-sertedly beyond the powers of the Commission. Nor is it necessary for us to discuss the well-presented arguments of the several parties on the distinction between judicial and quasi-judicial powers as it relates to the retroactive effect of the Commission’s order. See, e.g., Myers v. Hawkins, 362 So.2d 926 (Fla.1978); Southern Bell Telephone & Telegraph Co. v. Mobile America Corp., 291 So.2d 199 (Fla.1974); Canney v. Board of Public Instruction, 278 So.2d 260 (Fla.1973); Florida Motor Lines, Inc. v. Railroad Commissioners, 100 Fla. 538, 129 So. 876 (1930). We simply hold that the Commission properly has the power to adjudicate the dispute, but may not retroactively adjust the distribution of revenues made pursuant to the telephone companies’ arrangement prior to the Commission’s order.
Regarding the penalty of $30,000, Southern Bell argues that it was an abuse of discretion for the Commission to have imposed it since Southern Bell, during the time period cited by the Commission, was diligently trying to obtain stays and judicial review and offered to make bond for the protection of General Telephone. We need not decide whether under the facts shown there was sufficient noncomplianee or willful disobedience to justify the penalty. We reverse the order imposing the penalty on the simple ground that the underlying decision of the Commission, ordering payment based on the retroactive application of the new study method, was erroneous so that Southern Bell may not now be penalized for not immediately complying with it.
Those portions of Orders No. 11824 and 10953 which require Southern Bell and General Telephone to use seven-day time studies in connection with their toll settlements, as of and prospectively from the date of the Commission’s Order No. 10953, are affirmed. Those portions of the orders making the change retroactive to January 1, 1981, are reversed. Those portions of the orders requiring Southern Bell to pay approximately $3,000,000 to General Telephone, and to pay a penalty of $30,000, are reversed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OV-ERTON, McDonald, EHRLICH and SHAW, JJ., concur.