GRIMES, Justice.
Teleco Communications Company (Teleco) appeals from Order No. PSC-94-1304-FOF-TP of the Florida Public Service Commission (PSC). We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
Regency Towers is a condominium containing 340 privately owned units. Regency Towers Owners Association (RTOA) is the condominium association that represents the unit owners. Though some of the units at Regency Towers are owner-occupied, most of the units participate in RTOA’s rental pro *307 gram and are rented on a temporary basis to the general public.
Up until 1985, all units at Regency Towers received telecommunications service from Southern Bell. Southern Bell also owned the inside wiring at Regency Towers and leased it to Regency Towers.[1] In 1985, RTOA obtained its own switchboard equipment for the purpose of providing telecommunications services to the rental units at Regency Towers. Teleeo was responsible for maintaining that equipment. The owner-occupied units continued to receive service directly from Southern Bell.
In an effort to centralize responsibility for maintenance of all telecommunications equipment and wiring at Regency Towers, the RTOA Board of Directors instructed its management company, Advisors Realty,[2] to acquire the inside wire from Southern Bell.[3] Paultronics, Inc., which was the supplier of the new switchboard equipment, negotiated the purchase while Teleeo paid the $11,566 purchase price. Paultronics later assigned its rights to Teleeo. Thereafter, Teleeo was to be paid $1,072 per month for 84 months for the lease and maintenance of the wire, with title passing to RTOA at the end of the 84 months. Monthly payments were made to Teleeo from June 1986 until September 1988,[4] at which time RTOA took over the management of both Regency Towers and the rental program and ceased making payments.
In May 1991, Teleeo sued RTOA in circuit court for nonperformance of the terms of the lease agreement. RTOA filed a motion for referral to the PSC of those matters over which it has jurisdiction. The circuit court granted that motion but retained jurisdiction over the contract issues.
The PSC determined that Teleeo was a “telecommunications company” within the meaning of section 364.02(7), Florida Statutes (1993). As such, it was required to obtain a certificate of necessity, but had failed to do so. § 364.33, Fla. Stat. (1993); Fla. Admin. Code R. 25-4.004.[5] The PSC also concluded that Teleeo was not authorized to own or operate the inside wire.[6]
Because it had determined that Teleeo could not own or operate the wire as a matter of law, the PSC ordered Teleeo to transfer its title to the wire (1) to Southern Bell for those units not part of RTOA’s rental program[7] and (2) to the RTOA for those units within RTOA’s rental program. Also as a consequence of Teleeo’s violation, the PSC determined that Teleeo had no legitimate claim to the outstanding balance of unpaid lease payments from RTOA and that *308 any possible claim for recoupment of Teleco’s payment to Southern Bell had been more than satisfied. Finally, although Teleco was subject to penalty under section 364.285, the PSC declined to impose a penalty in view of the fact that RTOA had apparently endorsed and to some extent may have induced the purchase of the wire from Southern Bell, and because RTOA had received the benefit of the wire and its maintenance during the time payments had been made.
In this appeal, Teleco argues that it is not a “telecommunications company” because RTOA has consistently maintained ownership and control of the wire. Alternatively, Tele-co argues that it was not required to obtain a certificate of necessity because RTOA’s operations were exempt from PSC jurisdiction under the “transient exception” used for hotels and motels. Teleco also contends that the contract in issue is an installment sales contract which gives RTOA equitable title to the wire. These arguments were rejected by the PSC.
PSC orders come before this Court cloaked with a presumption of validity. Legal Envtl. Assistance Found., Inc. v. Clark, 668 So.2d 982, 987 (Fla.1996). We will uphold the PSC’s findings if competent substantial evidence exists in the record to support those findings. Id. We find that there is competent substantial evidence in the record to support the PSC’s findings of fact and conclusions of law.
Teleco also raises two additional arguments in this appeal. First, Teleco contends that the 1995 amendments to chapter 364, Florida Statutes, render this case moot. See Ch. 95-403, §§ 6, 14, 23, at 3318-3336, Laws of Fla. Those amendments created “alternative local exchange telecommunications companies” and authorized them to provide local exchange telecommunication service to the general public. § 364.337(1), Fla. Stat. (1995). Teleco points out that it was granted certification as an alternative local exchange company on May 10,1996, and as a result is now authorized to provide local exchange telecommunication service without having to obtain a certificate of necessity under section 364.33.
Even if the law as amended would now permit Teleco to acquire and own the inside wire without a certificate of necessity, chapter 95-403 does not contain a provision for retroactive application of the law. To the contrary, section 364.385(2), Florida Statutes (1995), states in relevant part:
Proceedings including judicial review pending on July 1,1995, shall be governed by the law as it existed prior to the date on which this section becomes a law.
The final order below was issued on October 21, 1994, well before June 18, 1995, the date when section 364.385(2) became a law. Thus the 1995 amendments to chapter 364 are inapplicable to this case and do not moot the PSC’s order. See also Florida Interex-change Carriers Ass’n v. Clark, 678 So.2d 1267 (Fla.1996) (upholding PSC’s determination that under specific savings clause, former version of chapter 364 controlled proceedings).
Teleco’s final argument, also raised in its motion for reconsideration below, is that the PSC exceeded its authority in ordering Teleco to transfer its title in the wire to Southern Bell and RTOA. The PSC, as an administrative agency created by the legislature, derives its powers, duties and authority solely from the legislature. City of Cape Coral v. GAC Utilities, Inc., 281 So.2d 493, 495-496 (Fla.1973). Thus, there must be express or implied statutory authority in order for the PSC to direct the transfer of title.
The PSC relied upon section 364.14 as the basis for its authority to order the transfer. However, by its plain language, section 364.14 deals solely with matters such as rates, rules, adequacy of telecommunications facilities and service, and the PSC’s authority to set rates and determine appropriate rules, facilities and service. Nowhere does the statute address improper ownership of telecommunications facilities, much less the PSC’s power to remedy such a situation. Thus, section 364.14 cannot serve as authority for the PSC’s decision to order transfer of title in the wire.
Nevertheless, we do find that the PSC was authorized to order the transfer of ownership of the wire. Section 364.01(3)(a), *309 Florida Statutes (1993), charges the PSC with exercising its exclusive jurisdiction in order to “[pjrotect the public health, safety, and welfare by ensuring that basic telecommunications services are available to all residents of the state at reasonable and affordable prices.” We read “available” to mean uninterrupted telecommunications service as well. Leaving the ownership of the wire with Teleco, which was found to be unauthorized to own or operate the wire, would jeopardize, or at least leave uncertain, the continuous availability of telecommunications service to the residents of Regency Towers pending the outcome of the circuit court action. This is especially true where RTOA is no longer paying for use of the wire. We therefore conclude that the PSC had the implied authority under section 364.01(3)(a) to order the transfer of title.
However, we cannot similarly conclude that the PSC had the authority to resolve any private contract issues between Teleco and RTOA. We refer specifically to the PSC’s findings that: (1) Teleco had no legitimate claim for the outstanding balance of the unpaid lease payments because it had never been authorized to own or provide service through the inside wire to RTOA; and (2) any possible claim for recoupment of Teleco’s payment to Southern Bell had been satisfied. We find no statutory authority, express or implied, for the PSC’s ruling on this type of contract issue. Cf. Southern Bell Tel. & Tel. Co. v. Florida Pub. Serv. Comm’n, 453 So.2d 780 (Fla.1984) (holding that section 364.07(2), Florida Statutes (1981), authorizing PSC to review intrastate toll settlement agreements and disapprove any such agreement if detrimental to the public interest, permitted PSC to “adjudicate” dispute between two telephone companies over their intrastate toll settlement agreement and order change in course of dealing). The resolution of the contractual issues should be decided by the circuit court, which expressly retained jurisdiction for that purpose. We express no view on these issues.
Accordingly, we reverse the PSC’s order insofar as it ruled on the contract issues. As to all other matters we affirm.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs in result only.

. Inside wire refers to the actual wires that connect the telephone instruments in the condominium units to the Private Branch Exchange telephone switch, which switches the calls either to connect with other units or for termination on Southern Bell’s or other telephone companies’ networks.

. Advisors Realty is a subsidiary of Major Development Company, the company that built Regency Towers.

. The Board instructed that the price paid for the wire could not exceed the lease amount then being paid to Southern Bell. At that time Regency Towers was paying $1072 per month to lease the wire.

. Total payments amounted to $29,176.

. Section 364.33, Florida Statutes (1993), states in relevant part:
A person may not begin the construction or operation of any telecommunications facility, or any extension thereof for the purpose of providing telecommunications services to the public, or acquire ownership or control thereof, in whatever manner, including the acquisition, transfer, or assignment of majority organizational control or controlling stock ownership, without prior approval.
§ 364.33, Fla. Stat. (1993). Florida Administrative Code Rule 25-4.004 states:
25-4.004 Certificates of Public Convenience and Necessity.
Except as provided in Chapter 364, Florida Statutes, no person shall begin the construction or operation of any telephone line, plant or system or an extension thereof or acquire ownership or control thereof, either directly or indirectly, without first obtaining from the Florida Public Service Commission a certificate that the present or future public convenience and necessity require or will require such construction, operation or acquisition.

. Teleeo does not contend that it would have been eligible to receive a certificate of necessity.

. This included both owner-occupied units and rented units not participating in RTOA's rental program.