824 So.2d 989 (2002)
1000 FRIENDS OF FLORIDA, INC., Appellant,
v.
STATE of Florida DEPARTMENT OF COMMUNITY AFFAIRS, and the City of Stuart, Appellees.
No. 4D01-2320.
District Court of Appeal of Florida, Fourth District.
August 28, 2002.
*990 Terrell K. Arline, Legal Director, 1000 Friends of Florida, Inc., Tallahassee, for appellant.
Cari L. Roth, General Counsel, Shaw P. Stiller, Assistant General Counsel, Tallahassee, for appellee State of Florida Department of Community Affairs.
Robert C. Apgar, Tallahassee, for appellee The City of Stuart.
STONE, J.
1000 Friends of Florida, Inc. (Friends) appeals from a Department of Community Affairs' (department) order upholding amendments to the intergovernmental coordination element of the city of Stuart's (Stuart) comprehensive plan, as complying with chapter 163, Florida Statutes (2000) (the Growth Management Act). We affirm the department's order.
On April 10, 2002, Stuart adopted two amendments to the intergovernmental coordination element of its comprehensive plan. The Stuart amendments authorize the city to coordinate "Joint Planning Areas" with the county, including establishing those areas "where annexation is likely to occur." The amendments anticipate joint planning to include issues such as "intergovernmental coordination; land use compatibility; natural resource protection; *991 and provision of services, infrastructure, and transportation facilities." The amendments specify that the identified areas and policies will be incorporated into city and county comprehensive plans or "through formal adoption of an official agreement between the City of Stuart and Martin County." We also note that the Stuart plan amendments contain several provisions to identify and implement joint planning areas; provide for establishing two joint planning areas for addressing annexation issues; exchange, following joint city and county (commission and local planning agency) meetings, of proposed policies and coordination on relevant matters of mutual concern in anticipation of annexation; and provide procedures for early notice and planning for future annexations. The department noted in its order that recognizing the validity of the inter-local agreements governing joint annexation planning areas does not interfere with adoption of comprehensive plan amendments at such time as the city assumes jurisdiction and has planning authority over the area.
The department determined that the amendments were in compliance with the Growth Management Act, and that the Act did not modify the applicable provisions of chapter 171, Florida Statutes, the Annexation Act. The department concluded that "[n]either chapter mandates comprehensive planning as a prerequisite to annexation." The department recognized that under chapter 171, the county's comprehensive plan would continue to apply to annexed areas until the city's plan is modified and that although the result of some joint planning efforts may need to be reflected in the comprehensive plans of both the city and the county, the law does not require "that all joint policy making be reflected in the comprehensive plans."
Friends, an independent citizens organization, asserts, inter alia, that the department's conclusion is in conflict with sections 163.3171 and 163.3177, Florida Statutes. It further argues that by allowing cities and counties to enter into agreements governing the future outcome of such an essential planning function, the department's order circumvents the protection afforded by procedures for amending comprehensive plans and results in the loss of the protection of public and state oversight and sufficient public participation in the process.
Section 163.3177(6)(h)(1)(a), Florida Statutes, directs that local governments amend the intergovernmental coordination elements of their comprehensive plans to "provide for procedures to identify and implement joint planning areas, especially for the purpose of annexation ...."
Clearly, section 163.3177(6)(h)(1)(a) requires that the plan amendments include procedures to implement joint planning areas. However, nothing in the statute mandates that all annexation planning agreements be by comprehensive plan amendment rather than through joint planning agreements. We also find no support in the statute for Friends' contention that the legislature intended section 163.3177(6)(h)(1)(a) be given priority over chapter 171.
Although we recognize that we are not bound by the department's interpretation of the statute, as the agency responsible for enforcing chapter 163, its decision is entitled to great deference. Fla. Interexchange Carriers Ass'n v. Clark, 678 So.2d 1267, 1270 (Fla.1996); Republic Media, Inc. v. Dep't of Transp., 714 So.2d 1203 (Fla. 5th DCA 1998). The department's decision is also consistent with legislative policy on planning coordination expressed in the section 163.3161(4) provision that "the intent of this act [is] to encourage and assure cooperation between and among municipalities and counties." It is *992 also consistent with that portion of section 163.3171(3), Florida Statutes, which provides that cities and counties "may jointly exercise the powers granted under the provisions of this act upon formal adoption of an official agreement ...."
We have considered Department of Community Affairs v. Collier County, DOAH Case No. 98-0324GM (Final Order June 22, 1999), and deem it distinguishable. There, the applicable provision in section 163.3177 mandated that the future land use element "must clearly identify the land use categories in which public schools are an allowable use." The plain meaning of this language, as asserted by the department in that case, is that those land use categories must be spelled out in the plan. Here, however, the statute simply requires the element to contain "procedures to identify and implement joint planning areas;" it does not, as in Collier, attempt to substitute an inter-local agreement for a provision that the statute mandates be included in the comprehensive plan.
We are not unmindful of Friends' understandable concern that the public will not participate in the creation of inter-local agreements to the same extent that the public is entitled to participate in the creation of plan amendments. However, we note that the inter-local agreements are ultimately subject to requirements for notice and public hearings by both city and county, see § 163.3171, Fla. Stat. (2000), and the requirement that procedures established in the plan amendments be followed.
Friends also asserts that the department erroneously interprets section 163.3177(6)(h)(1)(a) in recognizing that future annexation is not limited to an existing joint planning area incorporated in the plan. It is clear, however, that chapter 171 allows for future annexation agreements without limitation to previously adopted joint planning areas. See Martin County v. Dep't of Cmty. Affairs, 771 So.2d 1268 (Fla. 4th DCA 2000). Further, the provision relied on by Friends specifies that a comprehensive plan element provide "procedures" toward this end; the statute does not require that joint planning areas for annexation be adopted in the plan prior to annexation. Obviously, a municipality is free at any time to amend its comprehensive plan or charter to provide that future annexation be limited to joint planning areas recognized in its plan.
As the department's interpretation is consistent with the plain language of the statute, we conclude that provision for additional public participation, or a requirement that comprehensive plans be amended as a prerequisite to joint planning and future annexation, if needed, must be left to the legislature. Therefore, the department's order is affirmed.
POLEN, C.J. and GROSS, J., concur.